DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PROGRESSIVE SELECT INSURANCE COMPANY,**
Appellant,

v.

**IN HOUSE DIAGNOSTIC SERVICES, INC.,** a/a/o **DARRYL FRAZIER,**
Appellee.

No. 4D21-2581

[April 26, 2023]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Ellen Feld, Judge; L.T. Case No. COWE19008084 (83).

Chris W. Altenbernd of Banker Lopez Gassler P.A., Tampa, and DeeAnn J. McLemore of Banker Lopez Gassler P.A., St. Petersburg, for appellant.

Christina M. Kalin and John C. Daly of Daly & Barber, P.A., Plantation, for appellee.

*EN BANC*

ARTAU, J.

This case requires us to determine whether the trial court applied the proper reimbursement rate, in accordance with section 627.736(5)(a), Florida Statutes (2013), for imaging services provided to an insured under the terms of the personal injury protection (PIP) provisions of an automobile insurance policy (the policy). We conclude that the reimbursement rate for the provided imaging services should have been calculated using the lower 2007 Medicare Part B non-facility participating price rather than the higher 2007 Medicare Part B non-facility limiting charge. We therefore recede from *Allstate Fire & Casualty Insurance Co. v. Jeffrey L. Katzell, M.D., P.A.*, 323 So. 3d 191 (Fla. 4th DCA 2021), where a panel of this court held to the contrary. That decision was based on a confession of error and the reasoning set forth in *Priority Medical Centers, LLC v. Allstate Insurance Co.*, 319 So. 3d 724 (Fla. 3d DCA 2021). As such, we reverse the trial court's summary judgment and certify conflict with *Priority Medical.*

## A. This Case

The imaging services provider in this case, as the insured's assignee, sued the PIP insurer seeking additional reimbursement under the policy for diagnostic X-ray services provided to the insured following his involvement in a 2014 car accident. In cross-motions for summary judgment, the parties agreed this case involved no disputed issues of material fact and only presented the legal question of whether the insurer incorrectly determined the reimbursement rate for the provided imaging services.

Relying on *Priority Medical* and *Katzell,* the trial court agreed with the provider that the higher limiting charge, rather than the lower participating price, should have been utilized in determining the reimbursement rate for the imaging services provided. The trial court therefore entered summary judgment in the provider's favor for the difference between the rate based on the lower participating price (at which the provider already was reimbursed) and the higher limiting charge rate required by both *Priority Medical* and *Katzell.*

## B. The Applicable Statutory Provisions

Before the Legislature's 2012 amendments to the PIP statute, *see generally* ch. 2012-197, § 10, Laws of Fla. (effective Jan. 1, 2013), former sections 627.736(5)(a)2. and 3., Florida Statutes, provided:

> 2. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
>
> . . . .
>
> f. **For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B**. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

2

3. For purposes of subparagraph 2., **the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount under the schedule of Medicare Part B for 2007** for medical services, supplies, and care subject to Medicare Part B.

§ 627.736(5)(a)2.-3., Fla. Stat. (2011) (emphasis added).

As a result of the 2012 amendments, sections 627.736(5)(a)2. and 3. were renumbered as sections 627.736(5)(a)1. and 2., and now provide:

1.    The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:

. . . .

f.    For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I)    **The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).**

(II)    Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

3

2. **For purposes of subparagraph 1., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year** in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it **may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.**

§ 627.736(5)(a)1.-2., Fla. Stat. (2013) (emphasis added).

## C. *Priority Medical* and *Katzell*

In *Priority Medical*, a PIP insurer paid a non-party provider an amount representing 200% of the 2007 Medicare Part B limiting charge for imaging services provided to the insured following an automobile accident. 319 So. 3d at 725. After all PIP benefits available under the policy were exhausted, a second provider sought payment for imaging services provided to the insured under the policy's PIP provisions. *Id.* When the insurer denied payment based on the non-party provider's exhaustion of all PIP benefits at the higher limiting charge reimbursement rate, the second provider sued, claiming the insurer should have used the lower participating price, instead of the higher limiting charge, in determining the reimbursement rate for the non-party provider's imaging services. *Id.*

The second provider argued that, had the insurer reimbursed the non-party provider at the lower participating price rate, additional benefits would have been available under the policy's PIP provisions to at least partially satisfy the bills which the second provider submitted. *Id.* The trial court rejected the second provider's argument, determining that the reimbursement rate for the non-party provider's imaging services was appropriately calculated utilizing the higher limiting charge. *Id.*

On appeal, the Third District determined that the Legislature's amendatory deletion in 2012 of the phrase "participating physician," from what is now section 627.736(5)(a)2., in favor of the modifier "applicable," meant that the statute was to have a different meaning from that accorded to it before the amendment. *Id.* at 726. The Third District reasoned that, as such, two reimbursement rate calculation "possibilities" were available

4

for the imaging services at issue: "the non-facility participating price or the non-facility limiting charge." *Id.* at 726-27.

Because the policy in *Priority Medical* "elected to use the schedule of maximum charges or fee schedules for reimbursement of PIP claims" in accordance with the statute's terms, and because the statute indicated reimbursement "may not be less than what is allowable under the 2007 Medicare fee schedule, i.e., the 'applicable schedule,'" the PIP reimbursement rate for the non-party provider's imaging services was appropriately calculated utilizing the higher limiting charge because that "was the highest allowable amount." *Id.* at 727.

Shortly after the Third District issued *Priority Medical*, a provider in a similar appeal pending in this court confessed error based on the Third District's reasoning. *See Katzell*, 323 So. 3d at 192 (noting confession of error). In *Katzell*, a second provider was similarly denied payment based on an exhaustion of PIP benefits by a prior provider. *Id.* The second provider sued the PIP insurer for additional reimbursement, arguing that all PIP benefits were prematurely exhausted by the first provider because the insurer incorrectly calculated its reimbursement rate using the higher limiting charge instead of the lower participating price. *Id.* The trial court agreed, entering judgment against the PIP insurer with respect to the rate at which the first provider should have been reimbursed under the terms of the policy. *Id.* On appeal, we accepted the second provider's confession of error based on *Priority Medical*, adopted the Third District's reasoning, and held that the PIP insurer properly calculated the reimbursement rate for the first provider's imaging services utilizing the higher limiting charge rather than the lower participating price. *See id.* at 194.

### D. Our Disagreement with the Reasoning in *Priority Medical*

The insurer in this case argues that the Third District in *Priority Medical* did not properly consider the nature of a limiting charge under the Medicare program, because such was never analyzed in the case, leading to incorrect decisions in both *Priority Medical* and *Katzell*. We agree with the insurer.

Medicare Part B reimburses under two different fee schedules, depending on whether the provider accepts assignments on Medicare claims. If a provider accepts all assignments on Medicare claims, the provider will be reimbursed under the participating physicians' fee schedule, while providers who do not accept all assignments on Medicare claims will be reimbursed differently.

5

As the insurer explains, if a provider does not accept all assignments on Medicare claims, the provider may still be reimbursed under the non-participating physicians' fee schedule if the provider accepts the assignment. If the provider elects to not accept the assignment, then the provider is permitted to charge the insured an additional amount over what Medicare would approve, which is called the limiting charge. Based on Medicare's definition of "limiting charge," the insurer asserts that a limiting charge is not a fee schedule at all, but rather is only the amount which a provider may directly bill an insured. *See* Ctrs. for Medicare & Medicaid Servs., *Glossary, Limiting Charge*, https://www.cms.gov/glossary (last visited Sept. 1, 2022) (defining "limiting charge" as "the highest amount of money [the insured] can be charged for a covered service by doctors and other health care suppliers who don't accept assignment").

The insurer argues that the trial court in this case did not properly analyze the limiting charge's function, but instead determined that because the amount representing the limiting charge is listed on Medicare's website when a search is performed with a particular medical billing code to determine the reimbursement rate for that code's service, the limiting charge is properly considered in determining the appropriate reimbursement rate for providers of PIP imaging services in Florida. The insurer also argues that because Medicare did not create its online search tool for use in the context of Florida's PIP statute, and because Florida's PIP statute does not mention the search tool in discussing available reimbursement rates, the limiting charge reflected on the website for a given medical service should be ignored in determining the appropriate reimbursement rate for PIP services.

The insurer asserts that even if the limiting charge could be used in calculating the reimbursement rate for imaging services in PIP cases, the PIP statute does not distinguish between participating and non-participating physicians, thereby rendering the limiting charge's purpose unnecessary in Florida's PIP context.

The insurer contends that an accurate reading of sections 627.736(5)(a)1. and 2. together establishes that subparagraph 2. exists only to provide specificity to subparagraph 1. Using this logic, bolstered by the Legislature's 2012 addition of two new fee schedules under sub-subparagraph 1.f. of the statute, the insurer further contends that the use of the term "applicable schedule" in subparagraph 2. necessarily refers only to the fee schedules applicable to a given medical service as set forth in sub-subparagraph 1.f. Thus, the insurer argues, when the addition of these two fee schedules is considered in the context of the 2012 amendments, the appropriate interpretation of the phrase "applicable

schedule" is not what the Third District concluded in *Priority Medical*. The insurer therefore asks that we reconsider the reasoning in *Priority Medical*, which we adopted in *Katzell*.

The Third District in *Priority Medical* focused on the changes to subparagraph 2. in isolation and on the Legislature's omission of "participating physician fee schedule" in that subparagraph, instead of evaluating the changes to the overall statutory scheme affected by the 2012 amendments to both subparagraphs 1. and 2. *See Priority Medical*, 319 So. 3d at 726. This court in *Katzell* also only looked to the omission of the phrase "participating physician fee schedule" in subparagraph 2., instead of how the post-2012 amendment phrase "applicable fee schedule" in its place related to the reimbursement rate for the services enumerated in sub-subparagraphs 1.a.-f. *See Katzell*, 323 So. 3d at 193. In interpreting the statute as amended in 2012, both the Third District in *Priority Medical* and we in *Katzell* discounted the importance of the Legislature retaining the phrase "participating physician fee schedule" in subparagraph 1.f.(I) and overlooked the fact that nowhere in the relevant statutory provision is the phrase "limiting charge" even mentioned. *See generally* § 627.736(5)(a), Fla. Stat. (2013).

## E. Conclusion

We acknowledge the trial court was bound by *Katzell*, which adopted the Third District's reasoning in *Priority Medical*. Having had the issue fully briefed in this case, we now conclude that *Katzell* was wrongly decided. We therefore recede from *Katzell* and reverse the trial court's summary judgment. We also certify conflict with *Priority Medical*. On remand, the trial court is instructed to enter summary judgment in the insurer's favor and consistent with this opinion.

*Reversed and remanded with instructions.*

KLINGENSMITH, C.J., WARNER, GROSS, MAY, DAMOORGIAN, CIKLIN, GERBER, LEVINE, CONNER, FORST, and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***